## Mary M. Prendergast v. Michael Prendergast.

Articles 1574 and 1575 of the Civil Code lay down the rules regulating the forms or formalities to be observed in making a nuncupative will by private act. Such a will must be tested by those articles, and is subject to no other formality, 10 An. 212.

The testator must, therefore, either dictate his will, or in the absence of such dictation, he must present the instrument, which he has caused to be written, and declare that it contains his last intentions. In other words this presentation and declaration, which is unnecessary when the will is dictated, is intended to supply the want of dictation. There is a manifest difference between dictating a will and causing it to be written. Dictation is used in a technical sense, and means to pronounce orally what is destined to be written, at the same time, by another. Such is the settled definition of this term under our jurisprudence.

If the law requires a technical dictation, there must be a strict compliance. Nor would the courts be justified in presuming a compliance; for in nuncupative wills by private act nothing can be taken by implication. C. C. 1640, 1641; C. P. 930, 933. The decision in the case of *Bordelon* v. *Everett*, 11 An. 636, re-affirmed.

A will cannot be annulled on the ground that all the formalities were carried on in the presence of the witnesses. If it will suffice to comply with some formality in their absence, *a fortiori* in their presence. The attendance of witnesses is intended as a sanction to the proceedings, and cannot invalidate them in any contingency. C. C. 1642; *Bordelon* v. *Baron*, 11 An. 676, overruled.

MERRICK, C. J., dissenting. Article 1588 of the Civil Code declares, that the formalities to which testaments are subject by the provisions of the Code, must be observed or they are null and void. There is not then any discretion left the magistrate to reason concerning the use or necessity of the formalities prescribed. It is sufficient for him that they *are* prescribed. Formalities are declared by the Code to be of the essence of wills, that is, essential to their validity. The law on the subject has shown the greatest care to protect the testator from surprises and captation.

APPEAL from the District Court of the Parish of E. Baton Rouge, *Avery*, J. *New & Burke*, for plaintiff and appellant. *Dunn & Herron*, for defendant.

VOORHIES, J. The validity of the last will of *Thomas Prendergast*, deceased, must be tested under the provisions of articles 1574 and 1575 of the Civil Code.

These articles lay down the rules regulating the forms or formalities to be observed in making a nuncupative will by private act; and the second paragraph of the latter provides that : " This testament is subject to no other formality than those prescribed by this and the preceding article." 10 A. 212, *Graves* v. *Graves*.

The questions raised in this cause relate to the dictation of the will, and its presentation by the testator, accompanied by the declaration that the instrument contains his last intentions.

The first question is whether a nuncupative will by private act, which is not written by the testator, must, in all cases, be received under his dictation. This must be answered affirmatively, for all cases arising under the first paragraph of article 1574, and negatively under the second paragraph. The former uses the expression "*from his dictation;*" and the latter " *caused it to be written.*"

It is true that article 1568 lays down the general rule that nuncupative testaments, which are not written by the testator himself, must be made under his dictation. But, as stated above, nuncupative testaments by private act, made under the second clause of article 1574, are specially excepted from the operation of the general rule by the last clause of the subsequent article.

The testator, must, therefore, either dictate his will; or, in the absence of such dictation, he must present the instrument, which he has caused to be written, and

declare that it contains his last intentions. In other words, this presentation and declaration, which is unnecessary when the will is dictated, is intended to supply the want of dictation. This results from the very terms of the two paragraphs of the article.

There is a manifest difference between dictating a will and causing it to be written.·

Dictation is used in a technical sense and means to pronounce orally what is destined to be written at the same time by another. Such is the settled definition of this term under our jurisprudence.

But when the Code, after providing in what cases there must be a dictation, goes on stating that it will suffice if, upon complying with some additional formality, the testator causes the instrument to be written by another person, it is obvious that the purpose is to dispense with the technical dictation. For not only is the technical expression omitted, and words of ordinary import substituted; but, in other passages, the lawgiver uses in this connection such expressions as: "*caused it to be committed to writing*,"—"*written by another under his direction*," etc. C. C., 1569, 1642. And, if it be true that, in these terms, there should be no difference, then the second paragraph of the article 1574 is mere tautology, with one reservation which of itself however, is sufficient to show the fallacy of such premises. That reservation would be that, although it be imperative that the will be dictated, yet the testator might make the dictation in the absence of the witnesses, to one whose agency may remain entirely unknown!

If the law requires a technical dictation, there must be a strict compliance. Nor would the courts be justified in presuming a compliance; for, in nuncupative wills by private act, nothing can be taken by implication. C. C. 1640, 1641. C. P. 930, 933.

To require a dictation in the absence of the witnesses is an anomaly; and the law, so construed, would contain in its bosom the germ of its own destruction.

Rules of construction are resorted to for the purpose of giving effect to the law, and not with the view of rendering it nugatory. In the case of *Bordelon v. Averett*, (11 A. 636), the court said: "The nuncupative will, by public act, must be *dictated by the testator and written by the notary as dictated*; and, if under private signature, it may be written by himself, or another; but, when written by another person, it must be *from his dictation*, or he must have *caused it to be written*, in substance and in form, as he presents it, declaring it to contain his last will, *ses dernières volontés*." The distinction is there precisely made : the testator must either dictate the will, or he must cause it to be written ; but, if he resorts to the latter mode, he must, as he presents the instrument, declare that it contains his last intentions.

Such is the doctrine of the Code; and it is to be regretted that the ruling in the above quoted case was not adhered to in the case of *Bordelon v. Baron*, subsequently decided at Alexandria. (11 A. 676.) In the latter the court held a dictation to be always indispensable under article 1568, without even noticing the exception introduced by the second paragraph of article 1575. See the case of *Graves v. Graves*, 10 A. 212.

We now come to another question, somewhat connected with the previous discussion, and which has never been heretofore presented to our courts.

The article says that it will suffice if the testator causes the will to be written out of the presence of the witnesses, and it is contended that, although the instrument be in all other respects regular, if it has been written in their presence,

it is null and void for non-compliance, in this respect, with the letter and spirit of the law.

<em>PRENDERGAST<br>v.<br>PRENDERGAST.</em>

This doctrine is untenable. A will cannot be annulled on the ground that all the formalities were carried on in the presence of the witnesses. If it will suffice to comply with some formality in their absence; *a fortiori* in their presence. The attendance of witnesses is intended as a sanction to the proceedings, and cannot invalidate them in any contingency. C. C. 1642.

Six witnesses signed the will of *Thomas Prendergast,* deceased. By their testimony, taken down for the homologation, it appeared that this instrument, which the testator had caused to be written by one of the subscribing witnesses, was *duly presented* as such with the required declaration. There was, however, a conflict in the testimony of the same witnesses, when they were examined during the trial of this cause. Three of them, however, fully corroborated the former depositions upon the probate of the will. C. P. 943.

The same rules of evidence apply in this respect as in other cases, subject to the exception introduced by articles 1641 of the C. C., and 933 of the C. P.; and the weight of evidence is left to the appreciation of the Judge.

There is sufficient proof in the record that the testator caused his will to be written by one of the subscribing witnesses, and that the former presented the instrument to them as his last will, declaring that it contained his last intentions. The objections raised to its validity are, therefore, unfounded.

Judgment affirmed.

MERRICK, C. J. dissenting. The will in controversy in this case was written by one of the witnesses in the presence of the other witnesses, but the proof fails to show that it was dictated by the testator.

In order, therefore, to maintain the will, it is necessary to overrule the case of *Bordelon* v. *Baron,* 11 An. 676.

Having concurred in the decree in the former case, I have not yet been able to convince myself that the case was erroneously decided. Hence I feel constrained to dissent here.

It is declared by article 1588 of the Civil Code, thatthe formalities to which testaments are subject by the provisions of the Code, must be observed, or they are null and void.

There is not, then, any discretion left the magistrate to reason concerning the use or necessity of the formalities prescribed. It is sufficient for him that they *are* prescribed.

It was said in the case of *Babineau* v. *LeBlanc* that Art. 1574 contemplates two forms of execution of nuncupative wills by private act, one where it is dictated in the presence of the witnesses ; the other where the will was written by the testator, or caused to be written out of the presence of the witnesses.

The proof that this distinction exists is found in the next article which commences " In either case " &c., evidently referring to such distinction.

The will, it must be conceded on all sides, was not valid in the first form, if the same be necessary, because, (as it must be assumed in the absence of the requisite proof) it was not written from the dictation of the testator.

In the other form it failed in a compliance with the article, because (being written by another) it was not caused to be written by the testator " out of the presence of the witnesses." It is argued that this formality cannot be of any consequence and it is considered an unheard of thing that the presence of witnesses can vitiate any instrument. It is, as I think, enough for me that the for-

PRENDERGAST
v.
PRENDERGAST.

mality is required by an express provision of law, and that formalities are declared by the Code to be of the essence of wills, that is, essential to their validity. I think that I am as much at liberty to strike out the words " his dictation " from the first branch of the article as the words " out of their presence " in the last.

The law on the subject of wills has shown the greatest care to protect the testator from surprises and captation, and the construction which is here given to the article, will effectually close the door to everything of the kind, and bring the article, spirit and letter, in harmony with other provisions of the Code. For it may well be supposed that there is less opportunity to circumvent the testator in the case where he has prepared his will out of the presence of the witnesses, and where he has had abundant leisure to consider the effect of the expressions, and to correct errors and supply omissions than in the presence of the array of five witnesses, where the spirits of the most self-possessed are liable to be flurried. In the latter case, an adroit suggestion, or even a question and an incautious reply might materially vary the testamentary disposition intended by the testator at the outset, and thus there would be produced a will very different from the will which the testator would have dictated, *sua sponte*, or would have prepared out of the presence of the witnesses.