On the Merits.
The executrix and principal legatee named in the will prayed that the nearest collateral' relations of the deceased residing in the parish, to wit, Ira H. Knight, Mrs. Chebie Sanders, and Austin Theriot, be notified in wilting to be present at the opening and probate of the will, and the court so ordered.
Austin D. Theriot, a nephew of the deceased, filed three oppositions to the probate of the document. The first alleged duress and illegal practices by the beneficiaries; the second, that the pretended will “was not made and executed according to law”; and the third, that the decedent “was physically and mentally incapable of making a nuncupative will by public act according to law.”
The proponent excepted “upon the grounds of prematurity, as there could be no action taken to annul or set aside a will made in nuncupative form by public act until after *615 said will has been probated.” This exception was referred to the merits, and the minutes recite that, “there being no opposition to the two amended oppositions, the same are allowed.”
The testament was legal and valid on its face, made full proof of itself, and the proponent was entitled to a decree of execution and registry on presentation of the original or a duly certified copy thereof to the judge of probate. Civ.. Code, art. 1647; Code Prac. art. 930. Instead, however, of proceeding ex parte, the proponent, who was also named In the testament as executrix and legatee, thought proper to notify the presumptive heirs present of her intention to present the 'document on a certain day to the court for the purpose of obtaining a decree of recognition and execution. The Code of Practice provides for notice in writing to the presumptive heirs residing in the parish “that they may attend, if they think proper, at the opening and proof of the will.” Article 935.
In the case of Fox v. McDonough’s Succession, 18 La. Ann. 444, the legal effect of a decree probating a will and ordering its execution was stated as follows:
“The rules of Louisiana law relating to the opening and proving of wills apply to the preliminary proceedings necessary to the administration of estates, which are not conclusive upon those instituting them or the parties cited or present, so as to estop them from subsequently contesting the validity of a will, unless at the time of probate its validity was expressly put at issue. Aubert v. Aubert, 6 La. Ann. 104; Sophie v. Duplessis, 2 La. Ann. 724; Leonard v. Corrie, 10 La. Ann. 78; Code Prac. art. 940.
“These proceedings, however, establish a prima facie case, and when attacked the burden is on the party contesting to defeat the presumption of their correctness by sufficient proof. On the other hand, if at the time of probate the genuineness of the will is denied, the party seeking its execution must produce the kind of evidence necessary to counterbalance the express denial and establish its validity.”
The cases cited imply that a presumptive heir may, but is not bound to, contest the validity of a testament when it is presented for probate and execution. There is no good reason why a nuncupative will by public act should he an exception to the rule, as such a will can he assailed after its execution and registry on the ground that the formalities required by law were not complied with. Parol evidence is admissible for this purpose. King v. Vairin, 28 La. Ann. 452.
The issue, when a will is presented for probate, is whether the formalities required by law have been observed. Civ. Code, art. 1595. This issue may he as well determined at the time the will is presented as after-wards.
In the case at bar the issue to he determined is whether the formalities required by law were observed. The notary and two of the subscribing witnesses testified. Objection was made that their testimony was not admissible to contradict the recitals of the will. Counsel, in support of the objection, refers to Solari v. Barras, 45 La. Ann. 1133, 13 South. 627. It is true that there are isolated expressions in the opinion in that case which seemingly support the contention, such as: “Part of the excluded testimony of the notary is admissible — that is, that which does not add to, vary, explain, or contradict the will;” and, “Other witnesses may be heard upon the subject if they do not contradict the terms of the will.” These expressions, however, are explained and qualified by the subsequent statement in the opinion, to wit:
“To illustrate, we will mention that the notary cannot be heard to testify that the testator signed the will, it being silent on the subject; but he is a competent witness to support the defense that witnesses did sign as declared in the will.”
In that case the notary was not permitted to testify, and the remarks of the organ of the court must he understood to refer to the exclusion of the notary as a witness. The decree rested on other grounds.
The court did not decide that the testimony of the notary and the witnesses was inad *617 missible to show that certain formalities required by law in the making of the testament were not observed. Such a doctrine would be tantamount to holding that the forms of instruments which are sacramental cannot be inquired into except through the testimony of third persons who might chance to be present.
It would be both illogical and unjust to hold that the notary and subscribing witnesses are competent to prove the observance of the formalities, but cannot be questioned as to their nonobservance. If competent at all, they are so for all purposes necessary to arrive at the truth. In Succession of Cauvien, 46 La. Ann. 1412, 16 South. 309; cited by counsel, the notary and the three subscribing witnesses testified to all the facts and circumstances attending the confection of the testament. This has been the uniform practice.
There was no objection to the testimony on the ground that the allegations of the two amended oppositions were too vague and indefinite to admit of evidence to sustain them. The testator was an old man, and very deaf. When the notary approached his bedside, the decedent handed him a piece of paper on which certain testamentary dispositions had been written, saying at the same time, “Com-me ca” (like that). This was all that was said by the testator during the confection of the instrument, and all the witnesses concur in the statement that he was too deaf to hear anything that was said by the notary. This official acted in perfect good faith, and did the best he could under the circumstances. He considered that the acts and declarations of the testator were equivalent to a dictation. He went so far as to say that, the language of the testament came from the lips of the testator, and not from the written paper. But it is manifest from his testimony that the language came from the paper. The notary said:
“The old gentleman was very deaf. He could not hear anything. I went up to the old gentleman with the intention of drawing it up and of explaining to him what was necessary to do-in order to make the will perfectly legal, but he did not hear anything. He simply told me, ‘Comme ca’ (like that). He handed me a piece of paper, and said, ‘Like that, like that’; and I said myself the best thing to' do is to accept that will as he desired it from that piece of paper. I read it to the witnesses, and then I continued with the form and embodied that in the will.”
The notary further testified as follows:
“I tried to speak to him through a trumpet. He would not listen to me. He simply said, ‘Comme Ca, comme ca,’ and handed me the paper. I considered that that was just like the, dictation.”
The Civil Code, art. 1578, declares that thenuncupative testament by public act “must; be dictated by the testator, and written by the notary as it is dictated.”
In Prendergast v. Prendergast, 16 La. Ann. 220, 79 Am. Dec. 575, this court said:
. “There is a manifest difference between dictating a will and causing it to be written. Dictation is used in a technical sense, and means; to pronounce orally what is destined to be written at the same time by another. Such is the-settled definition of this term in our jurisprudence.”
In Hennessey’s Heirs v. Woulfe, 49 La. Ann. 1386, 1387, 22 South. 394, this court said:
“The testator cannot copy the project of the will.. Nor can the testator express his wishes-by signs. It must be the dictation of the voice. Nor will the law be satisfied if the testator-merely responds to the questions of the notary.”-
It would be useless to pursue the subject further, as it is indisputable that the testament was not dictated by the testator in any manner, form, or shape, and was therefore a nullity.
It is contended that Mrs. Sanders, a legatee for $400, was a necessary party to the oppositions filed by A. D. Theriot We do not think so. It was the duty o-f the executrix named in the will to present it to the probate court for execution and registry. la *619 :So doing the executrix represented the decedent and all persons claiming under the testament. The legatee occupied the same ■position as if she had been a creditor. It has ’been held that until the universal legatee Is recognized or makes himself a party to a ■suit he is bound by the acts of the defendant executor. Coulter v. Cresswell, 7 La. Ann. 367.
We see no error in the judgment appealed from, and it is therefore affirmed; appellants to pay costs of appeal.