## D. R. Coulter *v.* Elihu Cresswell et al.

7   367
114  619

Until the universal legatee makes himself a party to the suit, the act of the executor in defending it, is binding upon the former.

Where the suit was brought against C. in the Second District Court, and his succession was afterwards opened in the Fourth. It was held that the Second District Court had jurisdiction to try the suit which had been brought.

No one can be bound by testimony not taken contradictorily with him. Therefore, testimony taken between the parties to the suit, before the warrantor is made a party, cannot be used against the latter.

The plaintiff, in a redhibitory action, cannot recover the expense for the transportation of the slave from the place where bought, to where he died.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *Elmore* and *King*, for plaintiff. *J. Ad. Rozier*, for defendants. *C. Dufour*, for warrantor. By the court:

Preston, J. This is a redhibitory action, commenced against the estate of *Cresswell*, for the price of a slave sold by the deceased to the plaintiff, and damages.

The slave, with two children, was sold by *Cresswell* to the plaintiff, on the 17th of March, 1851, for six hundred dollars. She was fully guaranteed against the maladies prescribed against by law. Immediately after the sale, she was taken on board a steamboat, and conveyed to Union county, in the State of Arkansas, where the plaintiff resided. She died eleven days after the sale, of a disease, as the plaintiff alleges, called *augina pictores*, dependant on a diseased heart.

It was evident, on a *post mortem* examination, from the preternatural growth of the heart, and *pr. stuber auces*, and obstructions about it, that the disease was of long standing, and must, at the time of the sale, have been incurable.

The slave became so unwell as to require medical aid within three days after the sale. This raises a presumption, that she was affected with the disease at the time of the sale. The presumption is rendered conclusive, by the facts stated by the witnesses. We have no doubt, the woman was affected with a redhibitory malady at the time of the sale, and died of the disease.

There is no foundation for the suggestion, that the plaintiff did not exercise all proper care of the slave during her sickness. He engaged medical aid while it was yet supposed the disease might be but a cold, gave up his own state-room in the steamboat to her, and took the same care of her as if she had been a white person of his family. He took her, to be sure, from the landing in Arkansas, to his plantation, in his wagon; but he made her as comfortable, with mattresses, and otherwise, as possible. This was no doubt the easiest mode of conveyance that could be procured, and there is no proof that she was jolted, as suggested, over the rough roads of Arkansas.

A bill of exceptions was taken to the introduction, in evidence, of the testimony of witnesses residing in Arkansas, obtained under a commission, on the ground that *Mrs. Cresswell*, the universal legatee of *Elihu Cresswell*, had had no opportunity to cross-examine the witnesses. The suit was brought against the executor of *Cresswell*. He filed very searching cross-interrogatories to the

COULTER
*v.*
CRESSWELL.

witnesses before *Mrs. Cresswell* made herself a party to the suit, or was recognized, so far as appears, the universal legatee of the deceased. The acts of the executor, in defending the suit until she made herself a party, was binding upon her, unless, as pretended, the court was without jurisdiction. The succession was opened in the Fourth District Court; the suit was instituted in the Second District Court. It is said, the Second District Court had no jurisdiction. On the contrary, the Constitution gives it the same general jurisdiction with the Fourth District Court; and this court has never done more than recommend, for convenience, that suits against successions should be brought in the courts where the successions are opened, or be removed there on the application of the defendant.

The court excluded the testimony of the witnesses, taken in Arkansas, as evidence against the warrantor, because taken before she was made a party to the suit, and charged the jury, that it could have no effect against her. The court was clearly right. No one can be bound by testimony which is not taken contradictorily with him.

Without the testimony detailed in the fourth bill of exceptions, as to the negotiation between *Cresswell* and his vendor and warrantor, with regard to the slaves, the verdict and judgment is correct; and therefore, it becomes unnecessary to examine this bill of exceptions. The evidence seems to be of a very unimportant character.

Forty dollars of the damages allowed, were claimed for the expenses of transporting the slave to Arkansas, taking care of her, medical attendance, &c. The expense of transportation could not be allowed. And it appears that the physicians, under the circumstances, did not charge for their services. We think the plaintiff should be allowed something for his care and trouble. And upon the whole testimony, we do not think the jury has allowed more damages than the plaintiff has suffered.

The judgment of the district court is affirmed, with cost, without prejudice to the defendant's right of action against the warrantor.

---

## SAME CASE—ON A RE-HEARING.

By the court: *(Slidell,* J., absent.)

EUSTIS, C. J. I think the court had jurisdiction *ratione materiæ*, and that its exercise was a matter of discretion, which presents no case for interference.

The other grounds presented for a re-hearing, we have considered, without changing our original convictions on the merits.

The judgment formerly rendered, therefore, stands affirmed.