Mrs. Anna R. Savoie, plaintiff, brings this suit against defendant, C.B. Snell, doing business as West Bank Motors, the defendant being a dealer in secondhand automobiles. Plaintiff alleges that she purchased from defendant, on July 18, 1945, a 1939 Ford coupe automobile for $581.75, with a warranty from the vendor that the automobile was in good operating condition. The petition further recites that the car was in a defective condition at the time of the sale, and that under the provisions of Maximum Price Regulation 540, established by the Price Administrator under Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., the automobile should have been sold "as is" for not more than $461, which is the maximum non-warranted price, and plaintiff claims treble the overcharge as damages. Plaintiff further asserts that the automobile possessed a redhibitory vice which entitles her to a rescission of the sale and a return of the purchase price, plus expenses and a reasonable attorney's fee, itemized as follows:
Down payment on car .................. $201.75 Payments to Guedry Finance Co. for insurance, interest and finance charges .................... 202.25 Towing charges ....................... 50.00
Plaintiff also prayed for judgment for such additional amounts that she should pay Guedry Finance Company after the institution of the suit.
Defendant, in due course, filed his answer admitting the sale of the automobile to plaintiff with warranty. Defendant specifically denied that he violated any maximum price regulation, for the reason that the sale was made with a restrictive and not a full warranty. Defendant further alleged that the car was in good operating condition at the time of the sale and that if any defects developed in the car such condition ensued as a result of plaintiff's negligent operation of the automobile.
In the court below there was judgment in favor of plaintiff for $1268.55, comprising the following items:
Down payment in cash ................. $201.75 Payments to Guedry Finance Co ........ 522.55 Treble damages ....................... 362.25 Towing charges ....................... 50.00 Attorney's fee ....................... 150.00
and plaintiff was ordered to deliver the automobile to the defendant.
Defendant has perfected this appeal from said judgment; plaintiff has answered contending that the appeal is frivolous and claims ten per cent damages under Art. 907, C.P.
The record discloses the history of the automobile here involved. J.A. Klibert testified that he at one time owned the car; that it had been purchased by him from the defendant and was operated by him for about a year, until September 1944, when he traded the car back to defendant as a down payment on another automobile; that during the year the car was in Klibert's possession it manifested mechanical defects; that when the car was traded to defendant by him the cylinder block was cracked and the car was "running bad" and was in such poor, condition as to be of no value to him.
Plaintiff testified that she purchased the automobile from defendant on July 18, 1945, for $581.75 and paid $201.75 in cash on the purchase price; that she signed a note for the balance, plus interest and finance charges. There is no testimony evincing the amount of such note, but from a document termed "Purchaser and Dealer's Statement," which is made part of the record, we gather that the note is for the aggregate amount of $485.40, payable in twelve monthly installments of $40.45 each.
The testimony of plaintiff further shows that upon delivery of the car by defendant it was removed to her residence in Algiers, where it remained in the garage on said premises until August 4, 1945, except for a *Page 317 
brief period when the car was taken to defendant's establishment for the purpose of having the lights rewired; that she could not use the car for the reason that she could secure no gasoline for it; that on August 4, 1945, she obtained an allotment of gasoline and on that date decided to drive to Paincourtville, Louisiana, which is located about eighty miles from Algiers; that after starting the trip the car began to "knock" and "hum" and upon reaching Willswood, about twelve miles distant, the motor stopped and it was necessary to "get a push" from a passing truck in order to start the motor; that the next stop was made in Raceland at a service station where the car's radiator was checked, and an examination showed that the radiator needed no water; that after ascertaining such fact the car was then driven on to Paincourtville. Plaintiff testified that all during the drive the car was "making a terrible noise."
Plaintiff testified further that the next morning the car would not start; that the gauge indicated that the oil was "over full" and plaintiff drained almost two buckets of mixed oil and water from the crank case; that a mechanic was then summoned and the mechanic removed the motor from the chassis and placed it in the trunk of the car; the car was later towed to plaintiff's residence in Algiers.
About two months afterward plaintiff had an automobile mechanic named E.N. Passantino inspect the car. This mechanic, a witness for plaintiff, testified that he found the motor in the trunk of the car and that the cylinder block of the motor was cracked beyond repair.
Defendant admitted that he acquired the automobile from Klibert at the time and in the manner testified to by the latter, and stated that the car was in "fair" condition at the time. Defendant also stated that after receiving the car from Klibert he expended $39.50 for repairs, and that at a later date, prior to the sale of the car to plaintiff, the wiring system of the car was damaged by fire, which damage defendant also had repaired.
Defendant further testified that at the time he received the automobile from Klibert there was no indication that the cylinder block was cracked, and he had no knowledge of such fact, nor did he subsequently learn of the defect. He stated that the mechanics who made the repairs to the car on the two occasions mentioned did not inform him that there was anything wrong with the cylinder block.
The defendant has endeavored to show, both by his own testimony and by that of A.B. Petrie, an expert mechanic, that the block could not have been cracked prior to the stop that plaintiff made at Raceland, because of the circumstance that the radiator was full of water at that point, their opinions being that when a cylinder block of an automobile is cracked water will escape from the radiator into the cylinders and crank case. However, the defendant, on direct examination, made the admission that if the crack was not "through" the block the radiator might not necessarily require an excessive amount of water.
Plaintiff's first claim is for treble damages under the Emergency Price Control Act.
The written warranty of the automobile given by defendant to plaintiff reads as follows:
"The used car described below, including any equipment named in Appendix D of Maximum Price Regulation 540, is hereby warranted to be in good operating condition and to remain in such condition under normal use and service for a period of 30 days after delivery, or 1,000 miles, whichever may first occur.
"We, the undersigned, agree, if said car is delivered during the above period to our place of business, to make with reasonable promptness any repairs or replacements which may be necessary to its good operating condition in accordance with normal use and service, at a cost to the purchaser named below of not more than 50% of the normal charge for such repairs or replacements. Our normal charge is not in excess of OPA ceilings.
"This warranty does not extend to tires, tubes, paint, glass, upholstery, or to any repairs or replacements made necessary by misuse, negligence or accident." *Page 318 
Counsel for defendant argues that the warranty is a limited one and must be construed as written, and that the fullest extent of plaintiff's recovery should be fifty per cent of the cost of whatever repairs or replacements are necessary for placing the car in operating condition.
This contention of counsel is amply answered by the provisions of Maximum Price Regulation 540. The warranty involved in this case is identical with that required by the regulation. Art. II, Sec. 5, of the Regulation provides in part:
"If a dealer sells at the 'warranted' maximum price a used car not in good operating condition he makes an overcharge in excess of the permitted maximum price (the 'non-warranted' maximum price)."
Sec. 7b of the same article reads in part:
"A used car is in good operating condition when its functional parts, and those of its non-functional parts which are customarily attached to a car, are in a condition that will permit the used car to be driven safely and efficiently. Functional parts include but are not limited to: the chassis, motor, clutch, transmission, drive shaft, differential, steering mechanism, front axel, rear axel, brakes, battery and lighting system."
[1] There is no doubt that at the time of the sale the automobile was not in good operating condition. The evidence shows that the car was practically worthless due to the crack in the cylinder block, and such defect was not apparent, nor was it discoverable by simple inspection. The cracked cylinder block only manifested itself on the first trip taken by plaintiff in the automobile, which amounted to the first real test as to its condition given the car by plaintiff. In making the sale the defendant chose to give plaintiff a warranty and to collect for the car the maximum price permitted by Maximum Price Regulation 540 for a warranted vehicle, to-wit: $576. (plus $5.75 state sales tax), when in fact the car was not in good operating condition. The lawful ceiling price of an automobile such as the one that plaintiff purchased from defendant is the "as is" or non-warranted price, $461. It is our conclusion that any price charged by the defendant in excess of such non-warranted price was illegal.
Counsel maintains that in making the sale the defendant acted in good faith, he having no knowledge that the automobile was otherwise than in good condition. The evidence convinces us that the defendant knew nothing of the cracked cylinder block. When he acquired the car from Klibert the latter did not disclose that the automobile was subject to such fault, nor did the mechanics who twice repaired the car for the defendant discover the defect.
The Stabilization Extension Act of 1944 amended the Emergency Price Control Act so as to change the provision which compelled the courts to give a complaining purchaser three times the amount of an overcharge on a sale of commodities as damages, plus attorney's fees and costs. The pertinent part of the amendment reads as follows:
"In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation." 50 U.S.C.A.Appendix, § 925 (e).
[2] It results that the courts have discretionary authority in regard to the damages to be allowed an aggrieved purchaser. We conclude, in view of the good faith of the vendor, that the plaintiff should recover the overcharge, viz: $115, and not treble that amount.
[3] The court below fixed the fee of the attorney for plaintiff at $150. Whereas the defendant's liability is $115, the *Page 319 
amount of the overcharge, we believe that the allowance for the attorney's fee should be reduced to the sum of $50.
We now consider plaintiff's claim for a rescission of the sale on the grounds of redhibition.
[4] The automobile was practically useless, or at least its use was so inconvenient and imperfect that it must be presumed that the plaintiff would not have purchased it had its vice been known to her.
The plaintiff is entitled to the relief provided by Art. 2520, C.C., which reads as follows:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Defendant's counsel contend that if the sale is avoided and defendant owes plaintiff full restitution, the defendant at the same time should not be held for damages and attorney's fees under the Emergency Price Control Act, because in effect the rescission of the sale would be equivalent to holding that there was no valid sale.
[5] No authority for defendant's contention has been cited to us, and our own research fails to reveal any. We believe that it necessarily follows from the provisions of the Emergency Price Control Act that once a violation of the act has occurred the purchaser's right of action for the statutory damages accrues and that no subsequent avoidance of the sale on the grounds of redhibition would in the least degree affect the purchaser's right to institute an action and recover thereunder. The defendant is not relieved of liability to plaintiff under the act merely because the court has restored the parties to the status quo in a redhibitory action. The sale of the automobile was completely executed on July 18, 1945, and on that date the defendant incurred an absolute liability to plaintiff under Sec. 205(e) of the act.
[6] Plaintiff claims as damages $50.00, the cost of having the automobile hauled from Paincourtville to Algiers, which item plaintiff was allowed by the trial court. Art. 2531, C.C., provides:
"The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses."
In our opinion the article does not contemplate that the expenses of transporting the subject of the sale should be allowed to a purchaser in a redhibitory action. Coulter v. Cresswell, 7 La. Ann. 367.
[7] The judgment appealed from also awarded plaintiff $522.55 for "payments to Guidry Finance Co., insurance and finance charges." The testimony shows that plaintiff's purchase of the automobile was financed by that concern, but there is no evidence tending to show, nor did plaintiff attempt to prove, whether said finance company holds plaintiff's note. Neither does the record disclose what payments, if any, were made by plaintiff on the note. Moreover, the sum allowed plaintiff for payments made to Guedry Finance Company appears to be greater than the amount of the note, with interest and finance charges, as reflected by the "Purchaser and Dealer's Statement." The trial judge was clearly in error in allowing plaintiff the item of $522.55.
The purpose of plaintiff's suit is to avoid the sale, and if judgment is given plaintiff the parties must be restored to the situations in which they were before the contract, so far as possible. As we have concluded that the sale should be avoided we must, therefore, restore both the plaintiff and the defendant to their original positions. The plaintiff is entitled to the return of the $201.75 which she paid down on the purchase price of the car and she is also entitled to whatever sums she may have paid on the note given by her in connection with the sale. The defendant is entitled to have the car returned to him. However, the record does not contain such evidence *Page 320 
as is necessary for us to determine the defendant's liability to plaintiff, and we believe, in order that the ends of justice may be subserved, that this case should be remanded to the lower court for proof of the amount paid by plaintiff on the note executed by her for the balance of the purchase price, and any other expenses she may have been subjected to as an incident of the sale.
[8] It is obvious from our conclusions that this present appeal was taken by defendant in good faith and, therefore, the claim made by plaintiff for statutory damages for frivolous appeal is disallowed.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby reversed and this cause is remanded to the Twenty-fourth Judicial District Court for the Parish of Jefferson for further proceedings not inconsistent herewith; defendant and appellant is to pay the costs of the lower court, and the costs of this appeal are to be borne by plaintiff and appellee.
Reversed and Remanded. *Page 357