## BAGGETT v. FLEMING et al.
### No. 3411.

Circuit Court of Appeals, Tenth Circuit.
March 1, 1947.

---

J. B. Dudley, of Oklahoma City, Okl. (Paul Dudley, of Oklahoma City, Okl., on the brief), for appellant.

Karl E. Lachmann, Atty., Office of Price Administration, of Washington, D. C. (William E. Remy, Deputy Commissioner of Price Administration for Enforcement, David London, Director, Litigation Division, and Albert M. Dreyer, Chief, Appellate Branch, all of Washington, D. C., and Max Melville, Regional Enforcement Executive, of Denver, Colo., on the brief), for appellees.

Before PHILLIPS, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Paul A. Porter, Administrator of the Office of Price Administration[1] brought this action against J. E. Baggett, a used car dealer, doing business as Rex Motors, to recover statutory damages for past violations and to enjoin future violations of Maximum Price Regulation 540, 9 FR 6434 (pertaining to the sales of motor vehicles and motor vehicle equipment) issued under Section 2(a) of the Emergency Price Control Act of 1942, as amended, 58 Stat. 632, 50 U.S.C.A.Appendix, § 901 et seq. After the action was filed the Administrator consented to the intervention of appellee, W. C. Allred, and disclaimed any right of recovery for the alleged "over ceiling" sale made to him.

Maximum Price Regulation 540, as amended March 1, 1945, contained the following provisions at the time material to this action:

"Sec. 15. Definitions. When used in this regulation, the term: * * * 'Dealer' is a person who has received an order from the Office of Price Administration authorizing him to charge for a warranted used car defined in section 7 a warranted maximum price permitted by section 5,[2] * * *.

"(v) Requirements for grant of application by District Director. An application for authorization to sell as a dealer shall be granted if:

---

[1] Philip B. Fleming, Administrator, Office of Temporary Controls, has been substituted as appellee.

[2] "Sec. 5. Maximum prices for used cars: * * * (3) If the car is sold as a warranted used car (as defined in section 7) and the sale is by a dealer to a person not generally engaged in the business of selling used cars, add $100, or if it is higher, add 25% of the total of the base price and the equipment allowance. * * * The inclusion in the maximum prices of an additional amount when a used car is warranted is conditioned on the used car being in good operating condition as defined in section 7 (b). If a dealer sells at the 'warranted' maximum price a used car not in good operating condition he makes an overcharge in excess of the permitted maximum price (the 'non-warranted' maximum price) * * * ".

"(a) The applicant is generally engaged in the business of acquiring for sale, selling, displaying, repairing and reconditioning used cars; and

"(b) The applicant has a place for selling and displaying used cars; and

"(c) The applicant has a shop and equipment for reconditioning and repairing which in general are adequate for placing used cars in good operating condition as defined in section 7(b) and for fulfilling the terms of the warranty in section 7(c). * * * but,

"(d) In the case of an applicant who does not have the facilities described in (c) above, as a substitute for them, he may have a working arrangement, evidenced by a written contract, with a service supplier, who has the adequate reconditioning and repairing facilities described in (c) above, whereby the service supplier will perform the reconditioning and make the replacements the applicant, as a dealer, is required to make to place a used car in good operating condition as defined in section 7(b) or to fulfill the terms of the warranty in section 7(c); * * *".

"Sec. 7. * * * A warranted used car is a used car:

"(1) Which is in good operating condition as defined in paragraph (b); and

"(2) For which a dealer (as defined in section 15(b)) furnishes in writing to his purchaser at the time of sale the warranty [prescribed by the regulation]; and

"(3) In the case of a dealer who does not have adequate facilities for repairing or reconditioning used cars, it shall be a used car which, in addition to satisfying the conditions of (1) and (2), is one for which the service supplier that makes the repairs or replacements for the dealer in accordance with section 15(b) guarantees in writing the making of the repairs or replacements the dealer is obliged to make under his warranty. The guaranty shall be made in the manner [prescribed by the regulation] * * *

"(d) Service supplier's guaranty. The guaranty which a service supplier shall furnish in connection with the sale of a warranted used car shall be a part of the same document that contains the 'Dealer's Warranty' for such a used car, * * *".

During the time of the alleged violations Baggett was an authorized dealer in used automobiles, having been approved as a dealer by the Office of Price Administration. He did not have adequate facilities to repair and recondition used cars, as required by Section 7(c), but he had been approved as a dealer after furnishing satisfactory evidence, provided in Section 15(d), that he was in a financial position to maintain a working arrangement with a service supplier for reconditioning and repairing used automobiles.

Acting as an authorized dealer, Baggett made the sales which are the basis of this suit. The cars were sold as "warranted used cars" and the maximum price allowed under Section 5 was received for each car. When the sales were made Baggett signed the warranty as dealer. He did not, however, secure the written warranty of his service supplier, as required by Section 7(3), but executed the same in his own name or in his trade name, Rex Motors. The Administrator contends that since Baggett did not secure the written guaranty of his service supplier, the cars were not "warranted used cars" and any price charged over and above the maximum price permitted for a "non-warranted" car was an overcharge.

The trial court found that the functional and non-functional parts of each car sold had been in good operating condition, and that any car which had been returned to appellant during the time specified in the warranty was repaired and reconditioned as required by the written warranty. But, the court also found that appellant was not qualified under his dealer's authority to act as his own service supplier, and that his individual equipment for repairing and reconditioning used cars was insufficient to qualify him as a service supplier in fact. The record conclusively shows that the appellant had qualified as an authorized dealer with a "service supplier" under Section 15(d). Accordingly, the court concluded that since the cars were sold with-

654

out the written warranty of the dealer's "service supplier" they were not "warranted used cars" within the definition of Section 7, and the dealer was, therefore, not authorized to charge any sum in excess of the maximum price for a non-warranted car.

Appellant admits the alleged sales at "warranted used car" prices, without the service supplier's written warranty. He contends, however, that since the cars were warrantable as required by Section 7(b)[3], and he had ample facilities in his own shop to repair each and every car he sold under warranty, and did properly repair and recondition each car returned for that purpose, he at least substantially complied with the Regulation, and the cars were therefore "warranted used cars" within the definition of Section 7.

In order for a dealer to be entitled to charge the warranted maximum price permitted by Section 5, the automobile must be a "warranted used car" as defined by Section 7. Section 7 plainly defines a "warranted used car" and the conditions under which an authorized dealer shall be permitted to charge the maximum warranted price. Admittedly, the appellant did not strictly comply with the Regulation. Whether he substantially complied, we have no occasion to decide, because it is now established beyond doubt that a strict compliance with Price Control Regulations is prerequisite to the right to charge the prices fixed by the regulation. Cf. Porter v. Rumsey, 10 Cir., 1947, 180 F.2d 159; Porter v. Nowak, 1 Cir., 157 F.2d 824; United States v. Stein, 2 Cir., 154 F.2d 254; Bowles v. Murphy, D.C., 62 F. Supp. 295.

If the Regulation seems harsh and unreasonable, relief lies elsewhere. We have only the province and the duty to interpret, and, as interpreted, enforce it according to its terms.

The judgment is affirmed.

[3] "Sec. 7 * * * (b) * * * A used car is in good operating condition when its functional parts, and those of its non-functional parts which are custo-marily attached to a car, are in a condition that will permit the used car to be driven safely and efficiently. * * *"