BOGDA AUTO CO., INC. *v.* BARNES

[No. 17,757. Filed June 9, 1948.]

350

*Schortemeier, Eby & Wood & David Probstein,* all of Indianapolis, attorneys for appellant.

*Albert Stump & Byron Emswiller,* both of Indianapolis, attorneys for appellee.

HAMILTON, J.—Appellant, defendant in the trial court, is appealing from a judgment holding it liable in treble damages for overcharges in the sale of a warranted used automobile in violation of Office of Price Administration Maximum Price Regulation 540, as amended, adopted under the Emergency Price Control Act of 1942 and amendments thereto.

There is sufficient evidence in the record to establish the following facts:

Appellant is, and was, on and prior to September 17, 1946, a dealer in used passenger automobiles with its place of business located at No. 1018 North Meridian Street, Indianapolis, Indiana. On said date appellee, plaintiff below, accompanied by her sister-in-law and brother-in-law, went to appellant's place of business for the purpose of purchasing a used automobile.

Upon arrival at the used car lot of appellant company, the appellee and her party met and conversed with a Mr. Rinebolt, employed by appellant as a used-car salesman. They stated their business and were then shown a used 1941 Chrysler sedan automobile by said Rinebolt. During the negotiations and conversation about the car, the appellee asked Rinebolt what shape the car was in, and he told her that it was in good shape; she noticed that the grille of the car was broken in the front, and there was other evidence of damage and she inquired whether or not the car had been in a wreck and he said "No," but that the damage had been done by using the car to push other cars and the bumpers had crossed and broken the grille

and damaged the headlight on the Chrysler car; Rinebolt stated that the company would replace the chrome on the grille and the damaged headlight. The brother-in-law, accompanied by appellee, drove the automobile around the block and told appellee he thought it would be all right to buy the car, but for her to act upon her own judgment. The maximum price of the Chrysler car under O. P. A. regulations in its "as is" condition was $1090, and the maximum "warranted" price was $1363. Appellee relied upon Rinebolt's statement that the car was in good operating condition and bought the car for the maximum warranted price of $1363 and paid cash therefor. She was given a written warranty as required by the O. P. A. regulations. The car was left with appellant until the next day, when appellee's sister got the car and drove it from appellant's place of business to 2322 North LaSalle Street, Indianapolis. After putting gas and three quarts of oil in the car, the appellee and a friend, who drove, started to drive the car to the home of appellee's parents at Morgantown, Indiana, a distance of approximately forty miles from Indianapolis. The car was being driven at a speed of thirty-five to forty miles per hour, and when about five miles out of Indianapolis, the motor began to rattle and then developed a knock and the farther the car traveled the louder became the knocks and rattles; that by the time they arrived at Morgantown the brakes were gone and would not work. When they arrived at Morgantown, Indiana, appellee's father called two garagemen to examine the car; the garagemen examined the car, listened to the motor, and stated that the brakes were gone—no fluid in them, that a connecting rod or rods in the motor were burned out, that it needed new rings, and that the car could not be driven without being repaired. The car was towed

back to Indianapolis and examined by an expert mechanic who told appellee that it would take a new engine to put the car in good operating condition; that the car was a badly-worn 1941 model Chrysler, not in good operating condition; that a new motor would cost $450—that the cost of repairing the car would be $95 labor and $345 for parts and materials.

Upon returning to Indianapolis appellee and her father called upon Mr. Rinebolt at appellant's place of business and told him about the car and its condition; that Rinebolt said, "Bring the car back and we will repair it at 50% cost to you as provided in the written warranty"; Rinebolt told appellee that the cost of new rings for the car would be $90, of which appellee must bear one-half, or $45. The appellee had obtained an estimate of $28 for new rings from the garageman at Morgantown and did not want to pay appellant's price for the same work. The car was not repaired or used thereafter, and thereupon this action was instituted.

The complaint was in a single paragraph and alleges that the appellant warranted the car to be in good operating condition, which warranty was in writing; that appellee relied upon the warranty and representation and believing the same to be true purchased the used car and paid therefor the sum of $1363; that in truth and in fact the car was not in good operating condition as warranted and represented, but it was of greatly inferior quality and unsuited for the purpose for which it was warranted in that the piston rings were worn out; that rod bearings were worn out and needed replacing; that the crankshaft needed grinding; that the valves needed grinding; new gaskets were needed and other functional parts were in such con-

dition as to render it incapable of being driven in a safe and efficient manner.

A copy of the written warranty and of the maximum price regulation No. 540, and its amendments, adopted under the Emergency Price Control Act of 1942, as amended, were filed with and made a part of the complaint.

It was further alleged that by reason of warranty appellant was permitted to and did charge $272.58 more than otherwise would have been lawful and permitted under the maximum price regulation No. 540; that by reason of the premises appellee is entitled to recover damages in the sum of $817.74; that a reasonable attorney's fee is the sum of $300.

A demurrer for insufficient facts was filed to this complaint and overruled, which presents the first assigned error. The memorandum attached to the demurrer alleges that the complaint is insufficient for the reason that there is no averment to the effect that the plaintiff ever demanded or requested any adjustment, service, or replacements as provided in the written warranty made a part of the complaint; that until plaintiff complies with that part of the warranty agreement, she is not entitled to her action as set out in the complaint.

The used-car warranty, set out as Exhibit A in the complaint and referred to in the memorandum to the demurrer, provides in part as follows:

"DEALER'S USED CAR WARRANTY (As specified by Office of Price Administration MPR 540, Sec. 7 amended by AM, I-FR7871, effective 7-10-44, and AM, 5, effective 3-1-45).

"The used car described below, including any equipment named in Appendix D of Maximum Price Regulation 540, is hereby warranted to be in good operating condition and to remain in such

condition under normal use and service for a period of 30 days after delivery, or 1,000 miles, whichever may first occur.

"We, the undersigned agree, if said car is delivered during the above period to our place of business, to make with reasonable promptness any repairs or replacements which may be necessary to its good operating condition in accordance with normal use and service, at a cost to the purchaser named below of not more than 50% of the normal charge for such repairs or replacements. Our normal charge is not in excess of OPA ceilings."

The pertinent parts of Maximum Price Regulation No. 540 of the OPA reads as follows:

"The inclusion in the maximum prices of an additional amount when a used car is warranted is conditioned on the used car being in good operating condition as defined in section 7 (b). If a dealer sells at the 'warranted' maximum price a used car not in good operating condition he makes an overcharge in excess of the permitted maximum price (the 'non-warranted' maximum price). . . .

"When a dealer charges the 'warranted' maximum price for a used car not in good operating condition, or fails to make the above refund when he, the dealer, does not make the repairs or replacements required by his warranty, he is liable to the sanctions imposed by the Emergency Price Control Act of 1942, as amended, including the payment of damages to the buyer pursuant to section 205 (e). . . .

"(3) In the case of a dealer who does not have adequate facilities for repairing or reconditioning used cars, it shall be a used car which, in addition to satisfying the conditions of (1) and (2), is one for which the service supplier that makes the repairs or replacements for the dealer in accordance with section 15 (b) guaranties in writing the making of the repairs or replacements the dealer is obligated to make under his warranty. The guaranty shall be made in the manner stated in paragraph (d).

(b) *Good operating condition.* A used car is in good operating condition when its functional parts, and those of its non-functional parts which are customarily attached to a car, are in a condition that will permit the used car to be driven safely and efficiently. Functional parts include but are not limited to: the chassis, motor, clutch, transmission, drive shaft, differential steering mechanism, front axle, rear axle, brakes, battery and lighting system."

In view of the allegations of the complaint and the provisions of Regulation No. 540, *supra,* we hold that the court did not err in overruling the demurrer to the complaint.

The next assigned error is the overruling of appellant's motion for a new trial, based upon the grounds that the decision of the court is contrary to law and error in the assessment of the amount of recovery, being too large.

By its decision in favor of appellee, the trial court found that the Chrysler car in question was not in good operating condition at the time of the sale and that under Maximum Price Regulation No. 540, *supra,* said automobile could not be sold as a warranted car. Appellant did sell the car as a warranted car and charged the maximum price therefor. In the light of the evidence as we have narrated it, we must accept the findings of the trial court as conclusive upon all questions of fact. *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 77 N. E. 2d 116.

It is our opinion that, under the language of Maximum Price Regulation No. 540, *supra,* the appellee was not required to return the car to appellant and demand that appellant repair the car or make an adjustment because of alleged breach of warranty, as contended for by appellant. We believe

and so hold that, under said Regulation No. 540, *supra,* appellee was given an election of remedies, to wit: 1. She could have returned the car to appellant and demanded that it repair the car or make an adjustment because of the breach of the written warranty; or (2) appellee had the right to prosecute an action for treble damages as provided in the Emergency Price Control Act and Maximum Price Regulation No. 540. This is the remedy she elected to pursue.

Finally, appellant insists that the amount of recovery as assessed by the court is erroneous as being too large. It is appellant's contention that treble damages are recoverable only where the acts are wilful or where the evidence shows a failure to take practical precautions against a violation of the OPA regulations in overcharging; that appellee was entitled to recover only the amount of the costs of repairing the used car.

We are unable to agree with appellant's contention. The rule seems to be well settled that, under the authority of the Emergency Price Control Act of 1942, as amended, the burden of proof was upon the appellant to prove that the violation of the Act and Regulation No. 540, *supra,* was not wilful or that the appellant exercised practical precautions to avoid a violation of the OPA regulations in the sale of the car to appellee. *Fuller* v. *Borkin,* 163 F. 2d. 887, 889 (C. C. A. 7th 1947). The record is devoid of any evidence tending to establish either of the foregoing facts.

Furthermore, it has been held that, under said Act, the trial court has a discretion in assessing the amount of the recovery. *McRae* v. *Creedon,* 162 F. 2d 989, 992 (C. C. A. 10th 1947). In the instant case the court assessed the amount of recovery

at $818.01, which is three times the amount of the over-charge, as defined in § 7 (b) of Maximum Price Regulation No. 540, *supra*. The parties stipulated that a reasonable attorney's fee, if appellee recovered, was $300, making a total of $1118.01, which amount is supported by the evidence.

Finding no error in the record, the judgment of the trial court is hereby affirmed.

NOTE.—Reported in 79 N. E. 2d 654.