ELLIS, Judge.
On December 6th, 1948, plaintiff sold to the defendant a Crosley automobile for the price of $350.00 of which amount $150.00 was paid in cash and for the balance defendant executed a promissory note payable in 12 installments. The defendant returned the automobile to the plaintiff on or about March 16, 1949 and refused to pay any more installments, whereupon plaintiff seized under executory process the automobile, alleging an indebtedness of $233.16, together with interest at 8% per annum from the maturity date of each past due installment on the chattel mortgage note, plus attorney fees and costs.
The defendant proceeded by rule to enjoin the seizure and sale of the car and to rescind the sale and prayed for judgment for $150.00 representing the down payment ori the purchase price plus two installments of $23.31 paid, and in addition all expenditures which he had made on the car during the time it had been in his possession, based upon the contention that the car, by reason of latent vices and defects existing at the time of the sale, was rendered absolutely useless or its use so inconvenient and imperfect that he would not have purchased it had he known of the defects.
Plaintiff, who became the defendant in rule, answered that the car was suited for the purpose intended and further answered that it was sold “as is” and he accordingly prayed that the rule be dissolved and dismissed and in reconvention asked for damages.
Plaintiff and defendant entered into a stipulation to try the entire matter at one and the same time, which was done, and the judge of the District Court rendered judgment rescinding the sale, os'dering the-plaintiff to return defendant the note sued; on, and further rendered judgment in f ¿vor of the defendant and against the plaintiff,, defendant in. rule, for $150.00, the amount of the cash payment on the automobile,, plus the sum of $46.62 covering the two, installments paid on the mortgage note,, subject to a credit of $42.12 which the lower court found was owed by the defendant to the plaintiff on an open account, making a final judgment of $154.50, with legal interest from judicial demand until paid,, and ordering the plaintiff, defendant in, rule, to pay all costs.
From this judgment the plaintiff, defendant in rule, appealed and the defendant, plaintiff in rule, has answered the appeal asking that the judgment be increased to the sum of $323.97 and that as thus amended the judgment of the district court be affirmed.
The learned judge of the District Court has thoroughly and accurately covered the facts in the case and arrived at a correct conclusion as to a rescisión of the sale in accordance with' the provisions of Article 2520 of the Civil Code, and we therefore quote from his written reasons for judgment;
“On the date of the sale of the car in question, the defendant Green, together with his wife and his brother-in-law, one Purvis, went to the plaintiff’s place of business in the City of Bogalusa for the purpose of purchasing a second-hand automobile. The testimony of both Mrs. Green and Mr. Purvis (Mr. Green did not appear at the trial for the reason he was absent from the state), shows that they talked to Mr. H. F. Magee, Sr., who was at that time the senior member of the plaintiff partnership but who died between the date of the sale of the car and the trial of this suit. The testimony of these two witnesses is to the effect that, after considerable discussion with Mr. Magee, Sr., and after making a trial run of the car around town, they returned to the garage and entered into further discussion as to the conditipn of the car. Both of them testified, that Mr. Magee,, Sr,, stated that *87 the car was in good condition and that, accordingly, the defendant Green agreed to purchase it for the sum of Three Hundred Fifty ($350.00) Dollars, agreeing to pay One Hundred Fifty ($150.00) Dollars cash and the balance in monthly installments, as has heretofore been set forth. It seems that, after the talk with Mr. Magee, Sr., Mr. H. F. Magee, Jr. drew up the chattel mortgage and his testimony shows that, at the time he drew the mortgage, he stated to the defendant Green that the car was being sold ‘as is.’ Mrs. Green, who was present, denied this.”
“ * * * I think it pertinent, however, to point out that the defendant has shown by a preponderance of the evidence that Mr. H. F. Magee, Sr., warranted the car to be in good condition at the time of the sale.”
“On the same afternoon this car was purchased by the defendant, he and his wife left Bogalusa, Louisiana, intending to go to Georgetown, Mississippi and return the same evening. The testimony reflects that the car gave them trouble all the way and when they reached Pinola, Mississippi, the engine stopped running and could not be started. Mechanics at Pinola worked on the engine for some three hours and succeeded in getting it started and the defendant and his wife then proceeded towards Georgetown but had gone a distance of only two miles from Pinola when the engine again stopped running and they then had to get a wrecker and have the car pulled into Georgetown. Guynes Garage at Georgetown pulled the car in and told defendant it was in need of minor repairs and they would have to take it to Jackson, Mississippi, to get it fixed. However, when the motor was taken to Jackson the mechanic there stated that the motor was completely shot and the car would have to have a new motor. Accordingly, defendant (as is shown by the testimony of his wife) went back to Mr. H. F. Magee, Sr., who agreed to rebuild the motor on a 50-50 basis, viz: defendant standing oner half of the repairs and the plaintiff the other half. The defendant himself immediately returned the motor to Mr. Magee, Sr., and certain work was done to it, consisting of ring inserts and grinding the valves. The price of this work was in the amount' of Eighty-six and 70/100 ($86.70) Dollars.”
“The evidence further shows that shortly thereafter the battery of the car went bad and had to be re-charged and it was necessary to have a rod in said car repaired. A transmission top had to be installed as well as a carburetor, and it was 'further necessary that the starter be overhauled. The wiring had to be repaired and replaced, the pistons had to be fixed and the clutch gave considerable trouble. The defendant paid for all these repairs, with the exception of his half for the overhauling of the motor. Finally, defendant was advised by the plaintiff that the starter would need additional repair which would cost Fifty-five ($55.00) Dollars and at this .time, which was March 16, 1949, approximately three months after the purchase date, he turned the car back to plaintiff.”
“From the above resume of the evidence in this case, it seems to me that this defendant has shown by a preponderance of the evidence that there were certain latent defects in this car at the time of the purchase. While it is true the car was secondhand, yet it was no more than two and one half years old and, being a small car in the low-price field, the price paid of Three Hundred Fifty ($350.00) Dollars was indeed substantial.”
“Under the provisions of Article 2520 of the Civil Code, this defendant is entitled to a recission of the sale if the latent defects in this car rendered it absolutely useless, or its use so inconvenient and imperfect that it must be supposed that he would not have purchased it had he known of the defects. Naturally, this defendant purchased this car to use it and this use depended entirely on the car’s ability to run. The evidence shows that it ran very little during the whole three month period, irrespective of the numerous repairs that were placed thereon by the defendant. It seems strange that if the car had been in good condition, as contended by the-plaintiff, that he would have agreed to overhaul the motor and stand one-half of the charges thereof within a period of ten days after the date of the sale.”
*88 “Accordingly, as I am of the opinion that the latent defects in this car rendered its use so inconvenient and imperfect that it would not have been purchased by the defendant had he known of the defects, then said sale must be rescinded. I consider this holding to be in line with the cases of Crawford v. Abbott Automobile Company, 157 La. 59, 101 So. 871; Evans v. Crumbley, La.App., 1 So.2d 137. * * *”
Counsel for plaintiff motor company contends that the case of United Motor Car Company v. Drumm, 3 La.App. 741, is directly in point. In that case, a second hand five year old Peerless automobile was purchased under an express stipulation of the parties “as is.” The Court held that the clause, “as is,” when employed in the contract of sale of an automobile, does not relieve the vendor of all warranty, but modifies the warranty implied. The Court further stated that “in this case the automobile sold was five years old and second hand. It has been proven that it required considerable mechanical" attention to keep it going, but a five year old. second hand automobile usually does.”
In the case at bar the automobile was warranted, as being in good condition without limitation of the warranty, express or implied, and furthermore, the car was only two and one-half years old which; is not comparable to a five year old machine, and was sold for a substantial price.
The Judge disallowed the reimbursement of the expenses incurred by the defendant Green in attempting to repair the car while in his possession, stating: “I do not consider that he is entitled to said reimbursement for the reason that he got some use of the car while in his possession, and, too, I feel that substantial justice will be done by placing the parties in the positions they were in before the sale. Harris v. Halligan, La.App., 23 So.2d 332, 335.”
There is nothing in this record to show the value of the use of the car and neither do the pleadings reflect any request that the expenses of the defendant, plaintiff, .in. rule, be offset by the value of the use of the car. Under the testimony, the use of the car was certainly not very satisfactory as it was continually breaking down in one part or another and frequently stopping.
The parties to this suit cannot be placed' in the same position they were in before the sale, unless we allow the defendant, plaintiff in rule, to be reimbursed for the expenses incurred by him in attempting to repair the car while in his possession by the replacement of worn and defective parts. The defendant is entitled to reimbursement for the expenses of the permanent repairs as the defective and worn parts replaced were included in the express and implied warranty, and defendant in replacing them was doing that which the plaintiff should have done in order to place the machine in the condition warranted, and these permanent repairs will inure to the benefit of the plaintiff.
Evidently, the lower court in denying defendant recovery of money expended by him for repairs to the car followed the-statement of this Court in Harris v. Hal-ligan, supra, viz: “We do not think plain-, tiff is entitled to recover the items of damage which.he claims for loss of time on account of the failure of the car to operate,, or the expenses incurred in attempting to-repair it. Justice will be done by placing the parties in the same position they were-in before the sale as nearly as is possible-under the circumstances.”
This is the only statement made in this, case with regard to this question and we can only assume-that the facts justified such< a holding, whereas in the present case the-facts are different.
Dupuy v. Blotner Bros. Auto Parts & Service Station et al., La.App., 6 So.2d 560, was a case -in which plaintiff sought to have-rescirided the sale to him of a used automobile. The Court found that the car only-needed a motor block to put it in good: mechanical condition, which would cost: $40.00, and under this finding invoked the equitable power conferred on courts by. Article 2533 of the Civil Code and rejected', the demands of the plaintiff for the resci-sión of the sale of the car and rendered: judgment in favor of the plaintiff for $40.-00, the cost of a new block.
The defendant, plaintiff in rule, on. the same day that he purchased the car,. *89 had to employ the services of a wrecker in order to bring the car off of the road to his home. This cost him $10.00 and' was •due to the fact that'the worn out motor in the machine stopped a second time oil ,the •same short trip from Bogalusa to Georgetown, Mississippi.
Plaintiff relies upon Savoie v. Snell, La.App., 29 So.2d 315, wherein it was held that a purchaser of a second hand automobile who was entitled to rescind on the grounds of redhibition could not recover the cost of having the automobile hauled from the place where it broke down to the purchaser’s home. The Court stated that it did not believe that Article 2531 of the Civil Code •contemplated the repayment of such an expense. This Article provides: “The seller who knew not the vices of the thing, is •only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.” (Emphasis added.)
If Defendant had left this automobile -on the road, very likely there woüld have been very few parts left, and ■ employing a wrecker ,to move it to a point of saftey is an expense “incurred for the , preservation of the thing.”
In the present case, the “fruits” of the thing consisted of the use of the car, and the evidence shows that this was most limited; at least, it was insufficient to satisfy the expenses incurred by defendant. We will, therefore, allow this item.
We will disallow the following amounts for minor and inconsequential repairs not of a permanent nature and more or less incidental to the limited use of the automobile:
$2.75, -labor on fuel pump;
$1.62, removing and replacing oil;
$5.10, -repairing radiator;
$1.02,-charging battery;
$4.10, tire repair, etc.;
$2.80, charging battery and repairing stop light;
$8.92, charging battery arid repairing lights and horn,
making a total of $26.31 which, deducted from $366.09 leaves $339.78, and. this amount is, subject.to a credit of $42.12 being an amount.due for repairs .on thq motor and unpaid by the defendant to the plaintiff, which would -leave- due to the defendant by the plaintiff, the sum of $297.66. ■ .
.It is, therefore, ordered that the -judgment of the District Court be amended by increasing the amount of- the judgment-in favor of the defendant, Jessie -Green, Jr. and against the plaintiff, Magee.Nash Motor Company, .to the sum of $297.66, and as amended the judgment.be. affirmed. ' •