228 P.2d 267

**STEPHENS–FRANKLIN MOTORS, Inc.**
**v. LAMBROS.**

No. 5007.

Supreme Court of Arizona.

March 5, 1951.

Frank W. Beer and Hess Seaman, of Phoenix, for appellant.

Emmet M. Barry and W. T. Choisser, of Phoenix, for appellee.

DE CONCINI, Justice.

This is an action under the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq.

Plaintiff Evelyn Lambros alleged in the court below that on or about August 23, 1946, she purchased from the defendant Stephens-Franklin Motors, Inc., a corporation, a used 1942 DeSoto sedan automobile for the sum of $1,673.53; that according to the existing Office of Price Administration regulations she was overcharged and damaged in the amount of $384.31 because the sale was not of a warranted used car as required by the regulations. Plaintiff prayed judgment for treble damages allowable under the act, for $250 attorneys' fees and costs.

Defendant motor company in its answer admitted the sale and the sum paid by plaintiff, and admitted an overcharge of $49.98 alleged to be an inadvertent mistake made in good faith and for which it was willing to confess judgment. Judgment was granted in favor of the plaintiff in the sum of $346.11 after crediting charges for certain repairs which were necessary at the time she bought the car plus $250 attorneys' fees and costs. From said judgment defendant appealed.

The case was tried before the court without a jury. The following facts were developed. The plaintiff purchased, paid for and took possession of a 1942 DeSoto Sedan on August 23, 1946. Plaintiff signed a purchase order form which was itemized as follows:

| | |
|---|---|
| Base Price | 1,236.00 |
| Radio | 26.50 |
| Heater | 8.83 |
| Fluid Drive | 39.74 |
| Warranty | 327.77 |
| Sales Tax | 32.78 |
| Title | 1.75 |
| Total | 1,673.53 |

The order was apparently written up by defendant's salesman, a Mr. Bacon since that name printed in pencil appears thereon. The spaces marked "Warranted ( )"

and "Unwarranted ( )" were left un-checked on the purchase order form. There were a few items to be repaired and were marked on the order as follows: "Additional Information: Tune motor, fix hood, repair gear shift."

The plaintiff left the car with the defendant and returned at 5 p.m. that day to get the car when the repair items above listed were supposed to be completed. She drove to her home and when she entered the driveway the rear wheels locked. She phoned defendant and it sent a man out to jack up the car and free the wheels. The next day she took the car to defendant's repair shop and had some minor adjustments made for which she paid $2.40. Three days later while still having trouble with the gear shift she again took the car to defendant's repair shop. The garage or service manager estimated the necessary repairs to cost in excess of $200 and when he discovered that the car had just been purchased from defendant, referred her to the sales department for an adjustment. The sales manager agreed to have the car repaired at some cost to plaintiff to which she objected. The work was nevertheless done and she was charged and paid $7.83, which was 50% of the regular cost according to the terms of the OPA warranty set forth in the regulations. Upon leaving defendant's garage she immediately drove to Hinkle's garage, a party in whom she had confidence, where she had her car checked. Repairs were necessary to the extent of $76.73. Subsequently other repairs were needed in the amount of $13. Hinkle's shop foreman testified that the transmission gears and the fluid drive bearings were worn and needed replacement and in his opinion were in that condition when plaintiff purchased the car on August 23rd. There was no evidence to the contrary.

Plaintiff's proof of her allegation of an overcharge proceeded on the theory that this was not a sale of a warranted used car according to the regulations. She maintains first that a written warranty was not delivered as required by the regulations and therefore could not be part of the purchase price; and, secondly, that the car was not in good operating condition as defined in the regulations and therefore could not be sold as a warranted used car under the regulations. As to the written warranty, defendant mailed and plaintiff received her certificate of title and the warranty on or about September 11, 1946.

Defendant assigns as errors of the trial court that it erred as a matter of law in rendering judgment in the amount of $346.-11 as damages sustained and in denying the motion for new trial. Defendant first contends that the sale was executory and if so, the sale was incomplete until delivery of the certificate of title at which time the dealer's warranty was also delivered and Maximum Price Regulation 540 was therefore complied with literally. Defendant next contends that if the sale was an executed one, the lack of manual delivery of

the written warranty is immaterial since there was at all times a written and legally enforcible contract between the parties which was the purchase order signed by plaintiff. Defendant contends the itemization therein constituted a written memorandum satisfying the Statute of Frauds so that the warranty was at all times enforcible against the defendant motor company.

■■ There is no merit to defendant's contention that this was an executory sale. In this case the sale negotiations took place August 23, 1946. The buyer on that day paid for the car and after the seller performed certain repairs, took and accepted immediate delivery. The actual delivery of the goods is of the greatest importance in showing the intention of the parties to pass title and it is accordingly a general rule that in absence of contrary agreement the delivery and acceptance of the property vests the title in the buyer. 46 Am.Jur., Sales, § 433. We therefore think it clear from the facts at hand this was an executed sale completed on August 23, 1946.

Having decided this was an executed sale, we must next consider whether defendant delivered a warranty as prescribed by the OPA regulations. It is conceded that plaintiff did not receive the written warranty until September 11, 1946. The regulations provide that it must be delivered at the time of sale. These regulations have been held constitutional in too many cases to need citation here and while in effect they had the force of law.

Defendant was permitted to make an extra charge over the base price of the vehicle but only under circumstances of a strict compliance with the OPA regulations. Baggett v. Fleming, 10 Cir., 160 F.2d 651, 654 and cases cited therein. It is also stated in the Baggett case: "If the Regulation seems harsh and unreasonable, relief lies elsewhere. We have only the province and the duty to interpret, and, as interpreted, enforce it according to its terms."

■ It is a well-settled rule that where the plain mandate of the regulation is set forth so that there is no ambiguity present there is no room for construction and it should be enforced according to its clear language. State v. Airesearch Mfg. Co., 68 Ariz. 342, 206 P.2d 562.

■ However, it is not necessary to determine this case on the question of delivery of the warranty in strict compliance with the regulations. We prefer rather to rest our decision upon the more important question of whether the vehicle was in good operating condition at the time of the sale so that it would come within the requirements of a "warranted car" according to the regulations. The defendant was under two duties to the plaintiff because of the premium price charged for the warranty; one was to deliver the warranty, and the other was to deliver a vehicle that was in a mechanical condition that would authorize the dealer to warrant it to the plaintiff.

This sale was one controlled by Maximum Price Regulation 540 promulgated September 6, 1945 and including its amendments 1–10, and which in its entirety will be referred to as MPR 540. An examination of these regulations reveals that Section 5(b) (3) allows an additional charge for the warranty "when the car is sold as a warranted used car (as defined in section 7) and the sale is by a dealer to a person not generally engaged in the business of selling cars * * *." Pertinent portions of section 7 provide:

"*Warranted used cars*—(a) *Definition.* A warranted used car is a used car:

"(1) Which is in good operating condition as defined in paragraph (b); and

"(2) For which a dealer. (as defined in section 15(b)) furnishes in writing to his purchaser at the time of sale the warranty in paragraph (c); and * * *

    *     *     *     *     *     *

"(b) *Good operating condition.* A used car is in good operating condition when its functional parts, and those of its non-functional parts which are customarily attached to a car, are in a condition that will permit the used car to be driven safely and efficiently. Functional parts include but are not limited to: the chassis, motor, clutch, transmission, drive shaft, differential, steering mechanism, front axle, rear axle, brakes, battery and lighting system.

"(c) *Dealer's warranty.* The warranty a dealer shall furnish in writing to a purchaser at the time of sale is: * * * (then follows the specific text of the warranty.)"

The question presented is whether this automobile, which was sold as a warranted used car under the regulations, was in such mechanical condition that defendant had the *right under the regulations to warrant it and to charge the additional amount of $327.74 for it.*

■ It is apparent that the trial court concluded that the car was not in good operating condition at the time of sale. There is ample evidence to sustain that conclusion. Such being the case the car could not, for the purpose of carrying an additional charge therefor, be warranted by defendant since it was not in good operating condition within the definition of MPR 540, supra, at the time of the sale. It is only when a car meets the mechanical requirements of the regulation on the date of sale that a dealer has the right to warrant it and *to charge above the base price for it.* Bogda Auto Co. v. Barnes, 118 Ind. App. 349, 79 N.E.2d 654.

■ Other authorities hold that under facts similar to these there is a breach of warranty and when an additional price is charged for a warranty and the car is not in good operating condition at the time of the sale the dealer is liable to respond by refunding the price and damages as provided for in the OPA regulations. Monahan v. Jacobs & Politi, 187 Misc. 332, 66 N.Y.S.2d 207; Savoie v. Snell, La.App., 29

So.2d 315, modified in 213 La. 823, 35 So. 2d 745; Tyson v. Ross, 75 Ga.App. 200, 43 S.E.2d 125.

While plaintiff did not sound or label her complaint as an action for "breach of warranty" yet under the authorities cited her action would be consistent with such a suit. It makes little difference if plaintiff's complaint alleged that she was entitled to the return of the amount charged for the warranty plus damages on the ground that she did not get a car that was equal to the description of a warranted car in the OPA regulations or whether she sued for breach of warranty because the car was not in good operating condition at the time of the sale. In either case she would be entitled to recover.

Under the law as applied to the facts in this case, the trial court was justified in entering judgment in favor of the plaintiff.

Judgment affirmed.

UDALL, C. J., and STANFORD, and PHELPS, JJ., concur.

LA PRADE, Justice (specially concurring).

I concur in the result reached in the majority opinion but desire to state my reasons therefor. I cannot agree with the statements made that it is only when a car is in good operating condition that the dealer "has the right to warrant it". The appellant-dealer in this case undoubtedly believed that the car was in good operating condition and did, in fact, warrant it, and became liable in damages for a breach of the conditions of the warranty.

One of the purposes of the Act in question was to place price limitations upon used cars. The Act provides for an "as is" price and authorizes an additional charge over and above the "as is" price when a warranty is given with the car. The warranty is,—

"(1) that the car is in good operating condition, and

"(2) that it will remain in such condition, under normal use, for a period of 30 days or 1,000 miles."

In the second paragraph of the prescribed warranty form, in subsection (c) of section 7, the dealer agrees to repair the car as "may be necessary to its good operating condition in accordance with normal use and service." These repairs are to be made on a 50–50 basis. The reported cases indicate that this is the clause that caused confusion. I think that the legal effect of this clause is clearly analyzed in Monahan v. Jacobs & Politi, 187 Misc. 332, 66 N.Y. S.2d 207, 211, wherein it is said:

"* * * It appears to be perfectly clear, but many are apparently under the impression that this limits the dealer's liability to 50% of the cost of any repairs necessary to put the car in good operating condition. This is true if the car was in good condition when sold and then, through normal use, gets out of such condition.

However, *it is a condition precedent that the car was in good condition when sold. If such be not the fact, then the dealer is liable for his breach of the first warranty and he has made an overcharge in the amount of the warranted price,* under paragraph (3) of subdivision (b) of section 5 of the Regulation (10 Federal Register 1384). Such an overcharge gives the buyer the remedies provided in subdivision (e) of section 205 of the Emergency Price Control Act of 1942, U.S.C.A. Tit. 50, Appendix, § 925, as amended; hereinafter referred to as "Price Control Act." (Emphasis supplied.)

In section 3 of the Act it is provided that "when a dealer charges the 'warranted' maximum price for a used car not in good operating condition, or fails to make the above refund when he, the dealer does not make the repairs or the replacements required by his warranty, he is liable to the sanctions imposed by the Emergency Price Control Act of 1942, as amended, including payment of damages to the buyer pursuant to section 205(e)." The sanctions of the Act only come into play when there has been a breach of the warranty: Savoie v. Snell, La.App., 29 So.2d 315; Tyson v. Ross, 75 Ga.App. 200, 43 S.E.2d 125. I agree with the conclusion reached in the majority opinion that the trial court was justified in finding that the car was not in good operating condition.

I think that the failure of the dealer to deliver the warranty in writing at the time of the sale constituted only a technical violation of the rule requiring a delivery of the statutory warranty in writing. The buyer at all times had a legally enforceable contract of warranty. As it is pointed out in the majority opinion, there was a memorandum signed by the dealer indicating that he had charged for a warranty. The warranty referred to could be identified by parol or extrinsic evidence. 32 C.J.S., Evidence, § 1007(a). The warranty referred to was MPR 540. The terms and conditions of this statutory warranty would not have to be established by parol evidence. It was more than a moral obligation on the part of the seller, as would be the case where the seller's contract of warranty was oral with no written memorandum thereof, as was the case of Porter, Adm'r O.P.A. v. Nowak, 1 Cir., 157 F.2d 824, where the agreement of warranty was wholly oral.

In the case before us, the statute of frauds would not have been available to the seller. Consequently, the car was sold as a warranted car and the warranty was that referred to in the regulations, and for the reasons stated I believe that this warranty was breached. If no warranty had been given and the charge made therefor, then the action would have been for making an overcharge for something not delivered, namely, the warranty. The warranty having been given, paid for, and breached, the action can only be for breach of warranty.