**77 So.2d 522**

**William R. McKINNIS**

**v.**

**Tom SCANDALIATO and John Lingle.**

**No. 41486.**

Jan. 10, 1955.

Clem Sehrt, Edward J. Boyle, Thomas M. Brahney, Jr., Dudley A. Philips, Jr., New Orleans, for appellant, Tom Scandaliato.

Charles E. Cabibi, New Orleans, for appellant, John Lingle.

Miazza & Drury and F. D. V. de la Barre, New Orleans, for plaintiff-appellee.

PONDER, Justice.

The defendants have appealed from a judgment awarding the plaintiff double damages and attorney's fees for selling the plaintiff an automobile at a price in excess of the maximum price fixed by the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq.

The plaintiff brought suit against the defendants for the rescission of the sale, and in the alternative for a reduction in price and in the further alternative for treble damages and attorney's fees, for the violation of the Emergency Price Control Act.

After issue was joined and the case was tried, the lower court gave judgment in favor of the plaintiff for $926.34, representing double the amount of the overcharge and $200 for attorney's fees. The defendants have appealed.

Since the plaintiff has not answered the appeal, the only question presented for our consideration is whether or not the judgment of the lower court is well founded in awarding double damages and attorney's fees to the plaintiff.

It appears from the evidence that the automobile in question, a Cadillac, was purchased from General Motors Corporation by the defendant Lingle in Illinois for the price of $5,024.32 and that he drove the car with the speedometer disconnected to New Orleans. He placed the car with the S & D Motor Company, a dealer in used cars, for the purpose of sale and it was sold by the defendant Scandaliato to the plaintiff McKinnis. Scandaliato gave the plaintiff a receipt for $5,700, although the bill of sale signed by Lingle shows the price to be $5,400. The plaintiff testified that he paid $6,200 for the car in cash and a mechanic employee of the plaintiff testified that he saw Scandaliato pick up the money and place it in his pocket.

It appears that when the car was placed on the lot for sale the license plates were taken off and dealer's plates were placed thereon. The plaintiff testified that the car was sold to him as a new car but this was contradicted by the testimony of the defendants. The automobile was a 1952 four door sedan and it was equipped with radio, heater, power steering, undercoating, windshield washer, E Z eye-glass, oil filter and wheel discs.

A Mr. Tremoulet was placed on the stand by the plaintiff who testified that he was the General Sales Manager of Ponchar-

train Motors Company, the only licensed Cadillac dealer in New Orleans; that the price charged by his company for a similar car with similar equipment was $5,236.83; and that they sold such cars at that price. The defendants offered no evidence to establish the ceiling price of the car. The plaintiff offered in evidence the regulations of the Office of Price Stabilization which provides: "The ceiling price for any model automobile subsequent to the 1951 model, when sold as a used car is the ceiling delivered price of the automobile when new in the region where it is sold including the price of any item of extra, special or optional equipment that is on the car, until a ceiling price therefor is established by amendment to Appendix A of this regulation." CPR 94 Section 2(e). Louisiana is in Region B along with twenty-three other named states including Illinois, the state in which the car was originally purchased.

■ Under the facts in this case, the car was undoubtedly a used car and the regulations applying to the maximum price for used cars would apply.

■ Under the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 925, it is quite clear that if the violation was not wilful nor resulted from the failure to take precautions against the occurrence of the violation, the court should assess damages in the amount of the overcharge, but where there is proof of a wilful violation of the act, the court may assess damages of not more than three times the amount of the overcharge in its discretion.

■ The trial court had the opportunity of observing the witnesses and is in a better position to pass on their credibility and we are not prepared to say that the trial judge abused his discretion in awarding damages. It has been decided by many of the courts that it is incumbent upon the seller to prove that the violation was not willful once the overcharge is established. Fuller v. Borkin, 7 Cir., 1937, 163 F.2d 887; Bowles v. Batson, D.C.S.C.1945, 61 F.Supp. 839, affirmed Batson v. Porter, 154 F.2d 566; Cooperstown Cattle Co. v. Smith, 275 App.Div. 240, 89 N.Y.S.2d 89; Monahan v. Jacobs & Politi, 187 Misc. 332, 66 N.Y.S.2d 207; Bogda Auto Co. v. Barnes, 118 Ind.App. 349, 79 N.E.2d 654; Duffy v. Howell, 73 Cal.App.2d Supp. 990, 166 P.2d 411.

The trial judge evidently believed, after weighing the evidence, that the car was sold for $5,700 and that the ceiling price for a similar car with similar equipment was $5,236.83 and that the overcharge was $463.17. His judgment is based on double the overcharge, plus $200 attorney's fees.

After a careful review of the testimony in this case, we cannot say that there was error in his conclusion.

For the reasons assigned, the judgment is affirmed at appellants' cost.